# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

AMERICAN TOWERS, INC.,  )
EXCELL COMMUNICATIONS, INC.,  )
                                       )

     Plaintiffs,  )
                                       )

v.  )     No. 3:10-cv-1196
                                       )

WILSON COUNTY, TENNESSEE  )     Judge Sharp
BOARD OF ZONING APPEALS,  )
WILSON COUNTY, TENNESSEE  )
PLANNING COMMISSION,  )
                                       )

     Defendants.  )

## MEMORANDUM

This case concerns a protracted battle between two companies seeking to build a telecommunications tower in Wilson County, Tennessee and local zoning entities opposed to the project. The companies sued the county bodies, alleging that their inaction on the companies' zoning applications violated federal and state laws. Pending before the Court is the companies' motion for summary judgment, (Docket No. 55), which is fully briefed, (Docket Nos. 55-2, 66, & 69). For the reasons that follow, the Court GRANTS the motion.

## BACKGROUND

### I.    The coverage gap

AT&T Wireless, one of the largest providers of wireless services in the United States, sought to improve its service network after determining that a significant coverage gap existed in the Trice Road area of Wilson County, Tennessee. (Docket No. 57-1 at 4). AT&T searched the

area surrounding the intersection of Trice Road and Holt Road to identify existing telecommunications towers that could be used to collocate AT&T's equipment or, barring that, suitable land where a new tower could be constructed. (*Id.*) Finding no existing towers that met its requirements, AT&T retained American Towers, Inc. (ATI), an independent owner and operator of telecommunications tower sites, to develop a new tower. (*Id.*) ATI, in turn, engaged Excell Communications, a construction and development firm, to perform site-acquisition services and assist with the zoning-approval process. (Docket No. 57-2 at 2). Excell's task was to identify a property in the search area ATI defined that was adequately sized, properly zoned, and could be leased for this purpose. (*Id.* at 3–4). ATI and Excell looked at several potential properties and ultimately settled on a parcel located at 261 Trice Road in Lebanon, Tennessee. (*Id.* at 8–11, 13).

## II.      The Wilson County Tower Regulation

The primary policy governing the siting of telecommunications towers in Wilson County is a regulation entitled "Regarding Cell Tower Site Locations in Wilson County" (the Tower Regulation). (Docket No. 57-3 at 1). The Tower Regulation enumerates four main requirements an applicant must meet to construct a telecommunications tower. (*Id.*) First, the applicant must provide written evidence that it has investigated the possibility of collocating on an existing tower within one mile of the proposed site. (*Id.*) Second, the applicant must show the tower meets all Federal Aviation Authority (FAA) requirements. (*Id.*) Next, the applicant's plan must allow maintenance vehicles to maneuver on the site. (*Id.*) Finally, the applicant must ensure that any on-site building structure will be used only to store equipment. (*Id.*)

### III.   ATI's first set of applications

#### A.   The Use Application

On September 22, 2010, Excell filed with the Wilson County Board of Zoning Appeals an application for a Use on Appeal Permit (the Use Application) to allow Excell to build a new tower on a 400 foot by 400 foot parcel of land at 261 Trice Road.  (Docket No. 57-1 at 1).  In a section entitled "Site Need and Justification," the Use Application explained AT&T's need for the proposed site.  (*Id.* at 4).  To comply with the county's Tower Regulation, the Use Application contained (1) a statement that collocating on an existing tower was not feasible and that other wireless providers could collocate on the proposed site, (*id*. at 3, 5); (2) a Final Determination of No Hazard from the FAA, (*id*. at 8–10); (3) certification that vehicles would have site access, (*id*. at 6); and (4) certification that any on-site buildings would be used only for equipment storage, (*id*.).  Site maps and site plans rounded out the 33-page document.  (*Id.* at 7, 12–33).

#### B.   The Site Application

As Wilson County's zoning ordinance does not allow multiple uses on a single parcel, (*id*. at 5), and because the parcel in question was zoned for residential use, ATI also had to file an Application for Site Plan Approval (the Site Application) with the Wilson County Planning Commission.  Functionally, approval of the Site Application would correct the site's nonconforming use by subdividing the parcel into two (so that the tower site would be located on a separate parcel from the parent property) and designating the tower parcel as a utility lot. (Docket No. 57-12 at 1–3).

*C. The Zoning Board's first hearing on ATI's first Use Application on November 19, 2010*

At a Zoning Board hearing on November 19, 2010, ATI presented its initial Use Application, (Docket No. 57-5), submitting the evidence described above to show the project complied with the Tower Regulation's four requirements. (*Id.* at 15–18). To illustrate the significance of the coverage gap, ATI also presented propagation maps revealing holes in AT&T's coverage in the area, reports of customer complaints about poor coverage, and an account of an AT&T radio-frequency engineer who conducted a drive study of the area and concluded a significant gap in coverage existed. (Docket Nos. 57-5 at 12–14, 25–26; 57-6 at 1–3; 57-7 at 1; 57-8 at 1). Andy Rotenstreich, an attorney who appeared at the hearing on ATI's behalf, deciphered these three graphical exhibits for the Zoning Board and answered questions. (Docket No. 57-5 at 11–26).

Several local residents appeared at the hearing to oppose ATI's plan. One resident stated that members of the community did "not want the tower in our back door." (*Id.* at 58–59). Another wrote in a letter read into the record that the proposed tower would ruin his view and change the area's landscape. (*Id.* at 44). Many residents spoke of the tower's potentially negative health effects, (*id.* at 49, 54–57, 59–62), and several focused on the tower's impact on the well-being of students at Friendship Christian Academy, a private school located about 2500 feet from the proposed site, (*id.* at 45–47). Still others worried the tower would lower property values. (*Id.* at 55). (Responding to this latter charge, ATI presented to the Zoning Board an appraisal report showing "no discernable negative impact" on the values, marketability, or appreciation rates of homes near cell towers in Wilson County. (*Id.* at 21–23; Docket No. 57-10 at 1–21).) Finally, the Zoning Board heard from citizens who doubted that AT&T's coverage in the area needed improvement at all. (Docket No. 57-5 at 51–56).

4

Apart from these concerns, the Zoning Board also focused on the parcel's nonconforming status, a problem the Planning Commission was set to address when it considered ATI's Site Application later that morning, after the Zoning Board meeting adjourned.  (*Id.* at 31).  Asked about the interaction of pending applications before the Zoning Board and the Planning Commission, Wilson County Planner Tom Brashear stated that the Zoning Board "routinely will have a [Zoning Board] case that affects a planning commission case later in the morning," noting several examples that "require [the Zoning Board's] approval before it's been established at the planning commission that they're going to approve it."  (*Id.* at 32).  "But it's kind of a chicken or egg thing," Brashear observed.  (*Id.*)  "The planning commission is contingent on [the Zoning Board] approving the use before they're going to approve the site plan and vice versa."  (*Id.*)

Although Wilson County's zoning ordinance does not require the Planning Commission to vote on a site plan to correct a parcel's nonconforming use before the Zoning Board can vote on a Use Application concerning that parcel, the Zoning Board voted to deny ATI's Use Application "based on the nonconforming status of the site."  (*Id.* at 70).

### D.  *The Planning Commission's first hearing on ATI's first Site Application on December 17, 2010*

The Planning Commission deferred the hearing on ATI's first Site Application from November 19, 2010, to December 17, 2010.  On that later date, ATI presented its plan to eliminate the parcel's nonconforming use.  (Docket No. 57-13 at 2).  Wilson County Planner Tom Brashear, however, recommended that the Planning Commission deny the Site Application because the Zoning Board had not approved the Use Application on November 19, 2010.  He stated that the Planning Commission's approval would "creat[e] a utility lot for which no utility has been approved [by the Zoning Board] because the Board denied the requested use in

November.  The utility lot cannot be created [by the Planning Commission] without an approved use [by the Zoning Board], and a non-conforming lot cannot be divided [by the Planning Commission] without hearing the non-conformity status estimation.  Therefore, the Planning Commission cannot approve this lease lot subdivision."  (*Id.* at 2).  When a Planning Commission member asked Brashear whether the body's "protocol [is] to normally let the Board of Zoning Appeals review these [applications] prior to our taking up the case," he responded that "traditionally[,] the Board of Zoning Appeals has approved the use before [the Planning Commission] ever ha[s] approved the utility lot."  (*Id.* at 3).

Andy Rotenstreich, ATI's representative at the Planning Commission hearing, disagreed.  He pointed out that the county's zoning ordinance does not require the Zoning Board to approve the Use Application before the Planning Commission rules on the Site Application.  (*Id.* at 2–3).  In a deposition taken months later, Wilson County Mayor Claude Randall Hutto, who also sits on the Planning Commission, similarly stated that he knew of no ordinance that requires the Zoning Board to first vote on a Use Application before the Planning Commission can make its determination.  (Docket No. 57-14 at 2–3).

Brashear conceded the Site Application met the relevant "technical requirements," but nonetheless recommended denial because "the utility use for the tower was denied by the Board of Zoning Appeals, and therefore, the site plan cannot be approved."  (*Id.* at 4).  The Planning Commission followed his lead and denied ATI's application.  (*Id.*).

E.  *The Planning Commission's second hearing on ATI's first Site Application on February 18, 2011*

The Planning Commission considered ATI's Site Application again on February 18, 2011.  It again voted to deny the application without prejudice, ostensibly relying on two issues

discussed at the hearing. First, Planner Brashear voiced a concern that the septic tanks on the site might not comply with local ordinances. (Docket No. 57-17 at 1–2). Asked by a Planning Commission member to elaborate on the issue, Brashear responded: "All I know is that we received a phone call from neighboring residents asking us to look into the issue. We called the State Soil's Office and they told us that they would be glad to look into the issue. That's all I know about it." (*Id.* at 2). Second, Brashear advised that the Planning Commission does not typically take action on proposals involved in litigation. (*Id.* at 1; *see also* Docket No. 57-20 at 4–5 (discussing an "unwritten policy" that is the Zoning Board's "custom and practice")). As ATI and Excell had filed suit in federal court on December 17, 2010, to require the Zoning Board to allow the companies to build the tower, (Docket No. 1), Brashear's advice amounted to a recommendation that Wilson County indefinitely put off a decision on the Site Application until the litigation was resolved.

## IV.     ATI's second set of applications

In August 2011, ATI filed a second Site Application with the Planning Commission to eliminate the nonconforming use by subdividing the lot and creating a utility lot, and a second Use Application with the Zoning Board to construct the tower. (Docket Nos. 18 at 1 & 19 at 1).

### A.  *The Planning Commission's hearing on ATI's second Site Application on October 21, 2011*

The Planning Commission set the second Site Application for hearing on October 21, 2011. After the Planning Commission's chairwoman expressed her hope that the body would deny the application without prejudice, no other member rose to support her view. (Docket No. 57-20 at 16). As a result, the Planning Commission took no action on the second Site

Application which, as ATI's representative and the Planning Commission's lawyer agreed, meant the application was approved by operation of law.[1] (*Id.*).

### B. The Planning Commission's multiple considerations of ATI's Utility Lot Application

Still remaining before the Planning Commission, however, was the need to designate the subdivided parcel as a utility lot. The Planning Commission considered—and punted on—ATI's Utility Lot Application, (Docket No. 57-21), four times, (Docket Nos. 57-22 at 5 (December 16, 2011 hearing deferring action); 57-23 at 13 (February 17, 2012 hearing denying application without prejudice); 57-24 at 7 (April 20, 2012 hearing deferring action); 57-25 at 7 (May 18, 2012 hearing denying application without prejudice)). The Utility Lot Application remains unresolved.

---

[1] The exchange went as follows:

Madame Chair: [The Site Application is] being denied without prejudice because it's in litigation. Do I have a motion from the board?

(No response)

Madame Chair: Then if I do not have a motion through the board to deny without prejudice, I need a motion from the board.

(No response)

Madame Chair: We have to act on this some way.

[ATI Representative] Rotenstreich: Well, you don't have to act. It's approved if you don't act, but you don't have to act.

[Wilson County Attorney] Jennings: That's correct. Andy [Rotenstreich] and I agree on that.

[Wilson County Planner] Brashear: That's correct.

Mr. Rotenstreich: Yeah. So you can do nothing.

Madame Chair: I'm asking the board for a motion.

(No response)

Madame Chair: Then we have no motion from the board.

Mr. Rotenstreich: Thank you very much.

(Docket No. 57-20 at 16–17).

### C. The Zoning Board's first hearing on ATI's second Use Application on February 17, 2012

Meanwhile, on February 17, 2012, the Zoning Board held a hearing on the second Use Application, which became the company's operative application before the Zoning Board after ATI fixed the nonconforming-use issue that had earlier stymied the process. ATI presented evidence that its second Use Application complied with the county's Tower Regulation (which Planner Brashear later admitted, (Docket No. 57-4 at 4)) and that the parcel's nonconforming use was no longer a problem, (Docket No. 57-23 at 7-9, 13-14).

As they had at the earlier hearing on ATI's first Use Application, local citizens voiced concerns about the undesirable aesthetics and potentially negative health effects of the proposed tower. (Docket No. 57-23 at 7–9). As well, opponents raised the specter of a potential drop in enrollment at the Friendship Christian School. (*Id.* at 7). The Zoning Board also discussed ATI's ongoing negotiations with a property owner for an alternative tower location, which ATI engaged in at the county's request. (*Id.* at 3–4).

At the hearing's end, the Zoning Board voted to deny ATI's second Use Application without prejudice because of ATI's ongoing discussions with another landowner, as well as the Zoning Board's "unwritten policy" of not making decisions concerning matters in litigation. (*Id.* at 13).

### D. The Zoning Board's second hearing on ATI's second Use Application on April 20, 2012

9

The second Use Application was again before the Zoning Board on April 20, 2012. The Zoning Board voted to defer the issue until May while ATI negotiated over an alternative site. (Docket No. 57-26 at 11).

### E. The Zoning Board's third hearing on ATI's second Use Application on May 18, 2012

The third and final hearing on ATI's second Use Application took place on May 18, 2012. On that date, Brashear again informed the Zoning Board that the ATI's second Use Application met the requirements of the Tower Regulation, (Docket No. 57-27 at 1, 4–5), and ATI again stated that the parcel's nonconforming use had been eliminated, (*id.* at 1). Countering concerns about the proposed tower's economic impact on the nearby school, ATI's representative related that the company operates towers on 41 private-school campuses around the country, and that none of those schools suffered adverse economic consequences as a result. (*Id.* at 4). After hearing from two citizens opposed to the tower for the same reasons raised before, the Zoning Board voted to defer a decision on the second Use Application indefinitely until ATI's litigation came to a close. (*Id.* at 12).

### V. Federal lawsuit

As noted, ATI and Excell (collectively, ATI) filed this suit against Wilson County's Zoning Board and Planning Commission (collectively, Wilson County) on December 17, 2010, the same day that the Planning Commission held the initial hearing on ATI's first Site Application. (Docket No. 1). As the process wore on, ATI twice amended its complaint to narrate the twists and turns of the application labyrinth. (Docket Nos. 4 & 58). ATI's lawsuit asks the Court to declare that Wilson County violated the Telecommunications Act of 1996

(TCA), Pub. L. 104-104, Feb. 8, 1996, 110 Stat. 56, codified at 47 U.S.C. § 151 *et seq*., and to order the Zoning Board and Planning Commission to issue all necessary approvals and permits so ATI can construct the proposed tower. Specifically, ATI alleges the Zoning Board's denial of ATI's initial applications did not meet the TCA's writing and substantial-evidence requirements. Further, ATI maintains that Wilson County's actions with respect to its first set of applications had the effect of improperly prohibiting the provision of wireless services. ATI also asserts the county's failure to timely resolve the pending applications was unreasonable under the TCA. Finally, ATI contends that both bodies acted beyond the bounds of their legal authority under Tennessee law when they refused to approve applications that complied with the pertinent parts of the county's zoning ordinance.

ATI moved for summary judgment on all claims on December 3, 2012. (Docket No. 55). Wilson County opposed the motion on January 7, 2013, (Docket No. 63), and ATI replied one week later, (Docket No. 69). The motion is ripe for review.

## **LEGAL STANDARD**

A party may obtain summary judgment if the evidence establishes that there are no genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Covington v. Knox Cnty. Sch. Sys.*, 205 F.3d 912, 914 (6th Cir. 2000). The moving party bears the initial burden of satisfying the Court that the standards of Rule 56 have been met. *See Martin v. Kelley*, 803 F.2d 236, 239 n.4 (6th Cir. 1986). The ultimate question is whether any genuine issue of material fact is in dispute. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Covington*, 205 F.3d at 914 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). If so, summary judgment is inappropriate.

To defeat a properly supported summary-judgment motion, the nonmoving party must set forth specific facts that show a genuine issue of material fact for trial. If the party does not do so, summary judgment may be entered. Fed. R. Civ. P. 56(e). The nonmoving party's burden to point to evidence demonstrating a genuine issue of material fact for trial is triggered once the moving party shows an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325. A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

## ANALYSIS

The TCA does not intrude on the general authority of local governments to regulate zoning, 47 U.S.C. § 332(c)(7)(A), but it does regulate how local governments make decisions concerning the construction of telecommunications towers. ATI argues there is no genuine dispute of material fact that Wilson County's various refusals to approve ATI's applications violate four specific limits the TCA imposes on Wilson County and that the proper remedy is an injunction compelling the county to issue the requested permits. In addition, ATI maintains that summary judgment is appropriate on its claim that Wilson County exceeded its authority under state law, which limits the power of local governments evaluating zoning applications like ATI's to consider only whether those applications comply with pertinent zoning ordinances. The Court considers each argument in turn.

## I.     "In writing" (Count 2)

ATI first argues that Wilson County's failure to issue written denials of its applications violates the TCA's mandate that a local government decision "to deny a request to place,

construct, or modify personal wireless service facilities shall be in writing." *Id.* § 332(c)(7)(B)(iii).  To satisfy the TCA's "in writing" requirement, a local government's denial must "(1) be separate from the written record; (2) describe the reasons for the denial; and (3) contain a sufficient explanation of the reasons for the denial to allow a reviewing court to evaluate the evidence in the record that supports those reasons."  *New Par v. City of Saginaw*, 301 F.3d 390, 395–96 (6th Cir. 2002).  *New Par* adopted the "persuasive" reasoning of the First Circuit, which observed that "'permitting local boards to issue written denials that give no reasons for a decision would frustrate meaningful judicial review, *even where the written record may offer some guidance as to the board's rationale*.'"  *Id.* at 395 (quoting *Sw. Bell Mobile Sys., Inc. v. Todd*, 244 F.3d 51, 59–60 (1st Cir. 2001)) (emphasis added).

ATI argues that Wilson County's two written denials are inadequate.  In the first instance, the Zoning Board circled "Relief Denied" on the front of ATI's first Use Application, explaining in full that its decision was "due to noncompliance of property, multiple uses on site."  (Docket No. 57-1 at 1).  In the second instance, the Zoning Board denied without prejudice ATI's second Use Application on February 17, 2012, "based on ongoing litigations [sic] and negotiations with an alternate site."  (Docket No. 57-19 at 1).  In addition, ATI contends Wilson County never denied its two Site Applications and Utility Lot Application in writing, and that the Zoning Board never explained in writing the actions it took when it subsequently considered ATI's second Use Application.  For its part, instead of parsing out whether the Zoning Board and Planning Commission denied each individual application "in writing," Wilson County counters that its various denials meet the TCA's requirement because they are noted on the paper applications, in meeting minutes, and in written transcripts of the hearings.

Under Sixth Circuit authority, Wilson County's denials were not "in writing." To begin with, the notation on ATI's second Use Application—denying ATI's application because of "ongoing litigations [sic] and negotiations with an alternate site," (*id*.)—does not meet the third *New Par* prong. While those eight words effectively give two reasons for the denial, the relevance of these reasons, standing alone, is not self-evident. It does not explain whether Wilson County has a policy to deny zoning applications that generate litigation and, if so, the basis of that policy. And it does not illuminate the authority that makes ATI's hunt for an alternative location an allowable ground for denial under the county's zoning ordinance. The Zoning Board's notations, silent to the legal bases for both stated reasons, do not provide "a sufficient explanation of the reasons for the denial" and thus impede the Court's ability "to evaluate the evidence in the record that supports those reasons." *New Par*, 301 F.3d at 395–96.

As for the meeting minutes and hearing transcripts, neither of those satisfy *New Par*'s requirement that a denial "be separate from the written record," 301 F.3d at 395, for the simple reason that these documents *are* part of the written record. "The primary purpose of the separate writing requirement is to allow a reviewing court to focus with precision on the action that was taken and the reasons supporting such action." *Omnipoint Holdings, Inc. v. City of Southfield*, 355 F.3d 601, 606 (6th Cir. 2004). While the hearing transcripts and meeting minutes offer a window into the issues individual Zoning Board and Planning Commission members raised, the motions they made, and their ultimate votes, these documents fail to distill the reasons the Zoning Board—speaking as a unified body—denied ATI's applications. This is not to say that hearing transcripts and meeting minutes can never be sufficiently separate from the written record to satisfy *New Par*. But in this case, the hearing transcripts and meeting minutes are not sufficiently separate because the Court cannot discern after studying them the arguments the

Zoning Board and Planning Commission relied on as opposed to the arguments those bodies found unavailing. As the meeting minutes and hearing transcripts do not enable the Court "to focus with precision on . . . the reasons supporting [the County's] action[s]," *id.*, they fall short of *New Par*'s separate-writing requirement.

Absent a separate, reasoned, and written explanation of its decisions, Wilson County's denials do not meet the TCA's "in writing" requirement, entitling ATI to judgment as a matter of law on this issue.

## II.     Substantial evidence (Count 2)

Next, ATI urges that Wilson County's denials violate the TCA's requirement that zoning decisions be "supported by substantial evidence," 47 U.S.C. § 332(c)(7)(B)(iii), when evaluated "in the context of applicable state and local law," *T-Mobile Cent., LLC v. Charter Twp. of W. Bloomfield*, 691 F.3d 794, 798 (6th Cir. 2012) (internal quotation marks omitted). A reviewing court "may not overturn the [zoning] decision on 'substantial evidence' grounds if that decision is authorized by applicable local regulations and supported by a reasonable amount of evidence." *Id.* at 798–99 (internal quotation marks omitted).

"[T]he familiar substantial-evidence standard" is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* at 799 (quoting *Universal Camera v. NLRB*, 340 U.S. 474, 477 (1951)). In reviewing an agency action for substantial evidence, this Court must "look to whether the agency explained any credibility judgments it made and whether it gave reasons for crediting one piece of evidence over another." *Id.* (internal quotation marks omitted). Further, "[t]his Court reviews the entire record, including

evidence opposed to the result of the decision." *New Par*, 301 F.3d at 396 (internal quotation marks omitted).

ATI argues summary judgment should be granted because the record evidence establishes that the company's various applications comply with the relevant requirements and no substantial evidence supports Wilson County's denials. Wilson County counters that three grounds provide substantial evidence for its decisions.[2] First, Wilson County insists its denials were based on substantial evidence that ATI's proposed tower could detrimentally impact student enrollment at the Friendship Christian School. Second, Wilson County maintains the Zoning Board had ample grounds to deny ATI's applications because of the parcel's nonconforming status. And finally, Wilson County suggests its informal policy of not considering matters subject to pending litigation also justified its denials. The Court looks at each ground in turn.

To begin, the Zoning Board lacked substantial evidence that the proposed tower might negatively impact the Friendship Christian School, rendering this basis an impermissible ground to deny ATI's applications. The trouble for Wilson County is twofold. First, the concerns various citizens expressed about the tower's economic impact on the school all stem from fears about the tower's effects on the health of the school's students. A review of testimony offered to the Zoning Board in support of this claim makes that clear. Kevin Lester, chairman of the

---

[2] Wilson County appears to concede that concerns expressed about the proposed tower's aesthetic unsightliness, its health risks due to radio-frequency emissions, and its negative effect on property values are not legitimate grounds on which to rest its substantial-evidence explanations. (Docket No. 66 at 22–23). At any rate, as the county does not meaningfully develop arguments related to these three grounds, the Court deems them waived. *Hensley v. Gassman*, 693 F.3d 681, 687 n.6 (6th Cir. 2012) ("[i]t is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones") (internal quotation marks omitted).

school's board of directors, testified at the November 19, 2010 hearing on ATI's first Use

Application that

> the safety of our children is a primary concern of an institution like ours . . . .
> Many studies have gone on and are continuing to go on regarding whether it is or
> whether it is not safe and perhaps the jury is still out on that . . . . [I]t just does not
> seem like good stewardship on the children's lives to—while the jury may be out
> on this subject, to locate a tower that close to both the day care and Friendship
> Christian School [and] . . . it just doesn't seem wise to let the children be perhaps
> guinea pigs while we learn more about what the effects may be.

(Docket No. 57-5 at 56–57).  At the same hearing, Tina Devlin, a resident of the adjoining

property and mother of three children who are students at the Friendship Christian School,

related that several studies she found confirmed that "[c]hildren are at the greatest risk" from

tower emissions and that ATI's proposed tower was not "at a safe distance from the school."  (*Id.*

at 61–62).  The Zoning Board heard no testimony concerning the tower's impact on the school

unrelated to its perceived effect on student health.

   The same was true of the testimony the Zoning Board heard from citizens opposing

ATI's second Use Application on February 17, 2012.  Jerry McFarland, an elected Wilson

County Commissioner and area resident, stated that some parents "may not wish to elect to send

their children" to Friendship Christian School "if this site is too close."  (Docket No. 57-23 at 7).

McFarland expanded on this:

> One last comment, Mr. Chairman.  The concern is health and I know we can't
> consider that under the Federal law.  That doesn't mean it's not [sic] fair.  But if
> you can imagine the radiation generated from a cell tower or a light bulb and the
> closer you get to that light bulb, energy has caught a couple of us there.  But the
> closer you get to that [radio frequency], the more you're receiving it.  As you pass
> that site, you're going on down the road and the less and less you receive of it.
> The concern is there.  At the school these kids will be parked underneath it for
> eight hours a day and that's their concern and they just don't want that.

(*Id.* at 9).  In sum, the testimony the Zoning Board heard concerning the proposed tower's financial consequences on the school did not reach beyond speculation that parental fears about the tower's harmful effects on children's health would lead to a drop in enrollment.

The legal problem for Wilson County—and the reason the stated worries about the tower's impact on the school are not substantial evidence that can support the county's denials—is that health concerns are an impermissible ground of denial under the TCA.  *See* 47 U.S.C. § 332(c)(7)(B)(iv) ("No State or local government or instrumentality thereof may regulate the placement, construction, and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the Commission's regulations concerning such emissions.").  The Sixth Circuit has long held the same.  *Telespectrum, Inc. v. Pub. Serv. Comm'n of Ky.*, 227 F.3d 414, 424 (6th Cir. 2000) ("concerns of health risks due to the emissions may not constitute substantial evidence in support of denial by statutory rule").  As the economic-impact rationale the tower's opponents advanced is, at its core, a constellation of concerns about the tower's perceived health risks, the Zoning Board lacked substantial evidence to deny ATI's applications on this basis.

On top of that, the Zoning Board also lacked substantial evidence to deny the applications based on the tower's economic impact because each individual who spoke about the detriment the school would suffer relied on little more than conjecture and unsupported opinion.  While the Sixth Circuit has not said that lay opinion evidence may *never* satisfy the substantial-evidence requirement, it has rejected similar lay-opinion testimony at least twice.  *See T-Mobile Cent.*, 691 F.3d at 804 ("ostensibly lay opinion is not substantial evidence"); *Telespectrum*, 227 F.3d at 424 (while tower opponents "may have been credible, sympathetic witnesses . . . their testimony was no more than unsupported opinion").  Moreover, the cases on which the Sixth Circuit relied in

18

rejecting such testimony "remark that opinion is not sufficient to meet the substantial evidence requirement." *MIOP, Inc. v. City of Grand Rapids*, 175 F. Supp. 2d 952, 956–57 (W.D. Mich. 2001) (citing *Telespectrum*, 227 F.3d at 424).

Standing against this lay-opinion evidence is the testimony of ATI's representative, who related that none of the 41 private schools in the country on which ATI's towers are located have reported tower-related enrollment losses. (Docket No. 57-27 at 4). Taking all of that evidence into view—unsupported opinions on the one hand and unrefuted numerical data on the other— the Zoning Board did not have substantial evidence to deny ATI's applications due to the proposed tower's economic impact on the Friendship Christian School.

Next, the Court considers whether the nonconforming status of the proposed site constitutes substantial evidence to justify the Zoning Board's denial of ATI's applications. To recap the facts, the Zoning Board denied ATI's first Use Application on November 19, 2010, "based on the nonconforming status of the site." (Docket No. 57-5 at 70). When ATI came before the Planning Commission with a Site Application to eliminate the parcel's nonconforming use, the Planning Commission denied ATI's technically compliant Site Application because the Zoning Board previously denied ATI's Use Application. (Docket No. 57-13 at 4).

The precise question for the substantial-evidence analysis is whether the Planning Commission's decision to deny the Site Application to fix the parcel's nonconforming use based on the Zoning Board's earlier denial of the Use Application—which, recall, was due to the Planning Commission's anticipated action on the Site Application—is "authorized by applicable local regulations." *T-Mobile Cent.*, 691 F.3d at 799 (internal quotation marks omitted). The answer is no. As ATI's representative pointed out at the Planning Commission hearing in December 2010, Wilson County's zoning ordinance does not require the Zoning Board to

approve the Use Application before the Planning Commission rules on the Site Application. (Docket No. 57-13 at 2–3). Wilson County's Mayor, who does double duty as a Planning Commission member, agreed. (Docket No. 57-14 at 2–3). More to the point, Wilson County's opposition to ATI's summary-judgment motion does not point to any legal authority that authorized it to ensnare ATI in a bureaucratic Catch-22, no matter how good the catch. The county lacked substantial evidence to deny ATI's applications on this basis.

Finally, the Court considers whether Wilson County had substantial evidence to predicate denial of ATI's applications on the fact that ATI initiated litigation against the county. Assessed in the context of applicable state and local law, *T-Mobile Cent.*, 691 F.3d at 798–99, the answer, again, is no. Although Wilson County refers to a "custom" or "practice" of refusing consideration of items in pending litigation, it fails to provide evidence of this policy— unsurprisingly, perhaps, as the policy is "unwritten." (Docket No. 66 at 9). Moreover, it is unclear that Wilson County's denials of ATI's applications here are actually consistent with the "unwritten" policy. As Wilson County tells it, the Zoning Board and Planning Commission usually refuse to act on applications that involve litigation between the applicant and a third party opposed to the applicant's plan, *not the county itself*. (*Id.* at 17). Wilson County Planner Tom Brashear could only recall one instance in which the county refused to act on an application under this informal policy in which the county was sued. (Docket No. 68-2 at 59). Because applicable state and local laws do not empower Wilson County to deny ATI's applications due to the county's involvement in pending litigation, this basis, too, does not provide substantial evidence to support the county's denials.

In sum, Wilson County did not have substantial evidence to deny ATI's applications for any of the reasons it gave, entitling ATI to judgment as a matter of law on this issue.

### III. Prohibiting the provision of wireless services (Count 1)

ATI next argues that Wilson County's denials of ATI's applications transgress the TCA's bar on local government regulations that "prohibit or have the effect of prohibiting the provision of personal wireless service." 47 U.S.C. § 332(c)(7)(B)(i)(II). The statutory text forbids both general prohibitions or bans on wireless-service facilities, as well as facially neutral policies that "have the effect of prohibiting service" because they "have the necessary result that all possible sites in a given area will be rejected." *Laurence Wolf Capital Mgmt. Trust v. City of Ferndale*, 61 F. App'x 204, 220–21 (internal quotation marks omitted).

As ATI does not contend that Wilson County's regulations result in a general ban on wireless-service facilities, the issue here is whether Wilson County's denials of ATI's applications violate the TCA because they effectively prohibit the provision of personal wireless services. The Sixth Circuit uses "a two-part test to consider whether the denial of an application amounts to an effective prohibition: there must be (1) a showing of a significant gap in service coverage and (2) some inquiry into the feasibility of alternative facilities or site locations." *T-Mobile Cent.*, 691 F.3d at 805 (internal quotation marks omitted).

A "significant gap" in coverage exists where "a [single] provider is prevented from filling a significant gap in its *own* service coverage," even if other providers offer coverage in that area. *Id*. at 806 (internal quotation marks omitted). ATI argues it demonstrated a significant gap in AT&T's coverage in the area. For support, it points to propagation maps showing holes in signal strength, reports of customer complaints, an account of a radio-frequency engineer who conducted a drive study showing weak signal strength, (Docket Nos. 57-5 at 12–14, 25–26; 57-6 at 1–3; 57-7 at 1; 57-8 at 1), as well as the explanations of this evidence ATI's representative

offered to the Zoning Board, (Docket No. 57-5 at 11–26). Just as in *T-Mobile Central*—in which the Sixth Circuit held that propagation maps, drive-test data, a radio-frequency engineer's report, and customer complaints are the "types of evidence . . . suitable to support a claim for a substantial gap in coverage," 691 F.3d at 807—the evidence here amply shows a significant coverage gap.

Wilson County's two responses are unavailing. The county's first claim is that no one really knows how significant the gap is because ATI's measurements do not account for signal-strength improvements that may result if a nearby AT&T tower becomes operational. (Docket No. 66 at 24). The problem with this argument is that Wilson County has not factually countered ATI's evidence that the additional site falls outside of the area that would improve AT&T's weak coverage spots. (Docket No. 57-5 at 26–28). Merely flagging an apparently unviable alternative does not create an issue of fact. Wilson County's second argument—that a fact question exists as to the coverage gap's significance because one person testified that coverage in the area is fine, (*id.* at 25)—also does not get the county where it wants to go because Wilson County does not explain this person's qualifications or expertise to opine on the matter. A single opponent's lay opinion about coverage quality does not upend the conclusion that ATI showed a significant coverage gap.

The second prong of *T-Mobile Central*'s effective-prohibition inquiry focuses on whether a provider made "some showing as to the intrusiveness or necessity of its proposed means of closing" the identified gap. 691 F.3d at 808 (internal quotation marks omitted). In contrast to circuits that compel providers to demonstrate that no "viable alternatives" exist, the Sixth Circuit "require[s] the provider to show that the manner in which it proposes to fill the significant gap in service is the least intrusive on the values that the denial sought to serve." *Id.* (internal quotation

marks omitted).  A provider satisfies this "least intrusive" standard if it "show[s] that a good faith effort has been made to identify and evaluate less intrusive alternatives, e.g., that the provider has considered less sensitive sites, alternative system designs, alternative tower designs, placement of antennae on existing structures, etc."  *Id.* (internal quotation marks omitted).

ATI undoubtedly made a good-faith effort to identify and evaluate less intrusive alternatives to the Trice Road site.  At Wilson County's request, ATI investigated several potential alternative locations for the proposed tower.  Micah Retzlaff, a project manager for Excell Communications, the company with which ATI contracted for site-location services, stated that Excell investigated at least five properties in the search ring that met ATI's zoning and engineering requirements and whose owners were willing to enter into a lease agreement with ATI.  (Docket No. 57-2 at 13–14).  As well, Retzlaff testified that no other qualifying parcels apart from the Trice Road property exist in the search area.  (*Id.* at 14).  Based on this evidence, ATI made a good-faith effort to identify the least intrusive alternative.

Wilson County does not dispute that ATI considered these other properties.  Instead, it cherry-picks language from *T-Mobile Central* to claim that ATI cannot show good faith because the company did not consider alternative system designs or alternative tower designs.  (Docket No. 66 at 25).  But *T-Mobile Central*'s open set of examples of what a search for "less intrusive alternatives" might include (which is quoted above and concludes, tellingly, with the word "etc."), does not obligate ATI to conduct each inquiry before it can show good faith.

The county also maintains that a disputed fact exists as to whether ATI "investigated every single piece of property within the applicable search ring."  (*Id.*).  Wilson County misses the mark, as the law does not require this.  Indeed, the Sixth Circuit explicitly rejected the "no viable alternatives" standard, which, it observed, could force "a carrier [to] endlessly . . . search

23

for different, marginally better alternatives." *T-Mobile Cent.*, 691 F.3d at 808.  Because ATI was not required to turn every stone in its search for a viable location, the fact that it didn't do so is immaterial to Wilson County's legal argument.

To summarize:  ATI has met its burdens to show that a significant coverage gap exists and that its proposed tower is the least intrusive means of filling that gap.  Against that backdrop, Wilson County has not pointed to evidence in the record factually disputing either conclusion.  As a result, ATI is entitled to judgment as a matter of law on its claim that Wilson County's denials effectively prohibit the provision of personal wireless service in violation of the TCA.

### IV.  Unreasonable delay (Count 3)

The next claim on which ATI seeks summary judgment is that Wilson County's delays in processing the company's second set of applications violate the TCA.  The statute requires a local government to act "within a reasonable period of time after [a provider's] request is duly filed with such government or instrumentality, taking into account the nature and scope of such request."  47 U.S.C. § 332(c)(7)(B)(ii).  Although the TCA does not define it, the Federal Communications Commission (FCC) has declared a "reasonable period of time" is

> presumptively, 90 days to process personal wireless service facility siting applications requesting collocations, and, also presumptively, 150 days to process all other applications.  Accordingly, if State or local governments do not act upon applications within those timeframes, then a "failure to act" has occurred and personal wireless service providers may seek redress in a court of competent jurisdiction within 30 days, as provided in Section 332(c)(7)(B)(v).  The State or local government, however, will have the opportunity to rebut the presumption of reasonableness.

*In the Matter of Petition for Declaratory Ruling to Clarify Provisions of Section 332(c)(7)(B) to Ensure Timely Siting Review*, 24 FCC Rcd. 13994, 14005, ¶ 32 (Nov. 18, 2009) (FCC Order).

The operation of the 90- or 150-day presumption does "not, in and of itself, entitle the siting applicant to an injunction granting the application." *Id*. n.99. Instead, "if a court finds that the State or local authority has failed to rebut the presumption that it failed to act within a reasonable time, the court would then review the record to determine the appropriate remedy." *Id*.

ATI says the absolute latest date Wilson County had everything it needed to act on the company's applications is May 18, 2012.[3] ATI concludes the county's failure to process ATI's applications by October 18, 2012—150 days later—means that Wilson County presumptively violated the TCA because it did not act on the applications within "reasonable period of time."[4] ATI continues that the county cannot rebut this presumption because no evidence suggests that ATI's applications were exceptional and "legitimately require[d] more processing time." *Id*. at 14008, ¶ 37. ATI adds that the TCA does not include any provision that affirmatively allows local governments to defer action on a complete application because of pending litigation.

The Court agrees. Wilson County violated the TCA by failing to act on ATI's second set of applications within a reasonable period of time. In addition to the fact that the county's

---

[3] To understand how ATI reaches this date, a review of the convoluted path the applications took is necessary. ATI's second Site Application, which sought to subdivide the parcel in order to deal with the nonconforming-use issue, was approved by operation of law on October 21, 2011, when the Planning Commission failed to act on it. (Docket No. 57-20 at 16). As a result, the sole issue precluding the Zoning Board's approval of ATI's Use Application—the parcel's nonconforming status—was gone. Nevertheless, the Planning Commission still refused to take up ATI's Utility Lot application, (Docket No. 57-21), repeatedly invoking the county's unofficial no-consideration-when-there's-pending-litigation policy to defer a decision on the matter, (Docket Nos. 57-22 at 5; 57-23 at 13; 57-24 at 7; 57-25 at 7). The Zoning Board considered ATI's second Use Application on three occasions, voting each time either to deny it without prejudice or put off a decision, even though it met the Zoning Board's requirements. The third and final hearing on it took place on May 18, 2012, at which point the Zoning Board voted to defer consideration indefinitely until this litigation concluded. (Docket No. 57-27 at 1, 4–5, 12). Thus May 18, 2012, is the latest conceivable date on which ATI had all of its ducks in a row, so to speak.

[4] ATI's summary-judgment brief incorrectly notes that the hearing was on May 21, 2012. (Docket No. 55-2 at 24). The transcript of the Zoning Board meeting, however, indicates it occurred on May 18, 2012. (Docket No. 57-27 at 1). As a result, ATI's calculation of the 150-day period in its brief is off by three days.

pending-litigation rationale finds no support in the TCA, it also finds no support in Wilson

County's own policies or regulations, as discussed above. As a result, the Court grants summary

judgment to ATI on its claim that Wilson County's delays in processing ATI's applications

violate the TCA.

## V.       Remedy for TCA violations

Having found that ATI is entitled to judgment as a matter of law on the claims addressed

above, the Court next considers the appropriate remedy. ATI seeks an injunction directing

Wilson County to approve its applications and issue all necessary authorizations for ATI to build

and operate the proposed tower. (Docket No. 55-2 at 38–39). Wilson County responds that the

Court should remand the matter to the county to conduct additional evidentiary hearings that will

allow interested parties to submit more evidence. (Docket No. 66 at 26).

"Although the TCA does not specify a particular remedy for violations of its provisions,"

the Sixth Circuit has "repeatedly concluded that where the defendant denied a permit application,

and that denial violated the TCA's 'in writing' and 'substantial evidence' requirements, the

proper remedy is injunctive relief compelling the defendant to issue the requested permit."

*Tennessee ex rel. Wireless Income Props., LLC v. City of Chattanooga*, 403 F.3d 392, 399 (6th

Cir. 2005) (citation omitted). Wilson County fails to explain what additional evidentiary

hearings could possibly achieve, and the Court discerns no useful purpose in remanding this

matter to expand the record. In addition, Wilson County does not dispute that ATI's various

applications meet the technical requirements that county regulations impose. Given that, "the

proper remedy is injunctive relief compelling the defendant to issue the requested permit." *Id*.

Accordingly, Wilson County must immediately grant the Use Application and all approvals

necessary to allow ATI to construct the proposed tower.  In addition, the county must cease all attempts to prevent ATI from subdividing the proposed site.

## VI.     State-law claim (Count 4)

Separate from its TCA claims, ATI seeks summary judgment on its claim that the Zoning Board and Planning Commission lacked authority under Tennessee law to deny ATI's applications due to pending litigation because this is not a permissible ground for denial under Wilson County's zoning ordinance.  (Docket No. 55-2 at 39–40).  In response, the county latches on to five words from another case involving its Zoning Board and argues that even if its denials were not based on grounds enumerated in the zoning ordinance, its actions were nonetheless "within existing standards and guidelines."  (Docket No. 66 at 26 (citing *Wilson Cnty. Youth Emergency Shelter, Inc. v. Wilson Cnty.*, 13 S.W.3d 338, 342 (Tenn. Ct. App. 1999))).

The administrative authority of the Zoning Board and Planning Commission permits these bodies only to consider whether an applicant meets the rules enumerated in the county's zoning ordinance.  *Merritt v. Wilson Cnty. Bd. of Zoning Appeals*, 656 S.W.2d 846, 854–55 (Tenn. Ct. App. 1983).  They have "neither the power to zone nor to amend the zoning ordinance."  *Id.* at 854.  As a result, "[a] denial of a zoning permit which meets all the requirements of the ordinance when there is no valid ground for denial is arbitrary and unreasonable."  *Id.*

As discussed above, ATI's applications met the requirements of Wilson County's zoning ordinance.  Further, the county's practice of not considering matters subject to pending litigation finds no support in the zoning ordinance, contains no pending-litigation provision.  The Zoning Board and Planning Commission exceeded their authority because they did more than simply

determine whether ATI's requested use complies with Wilson County's zoning laws. ATI is entitled to summary judgment on this claim.

## **CONCLUSION**

For the foregoing reasons, the Court GRANTS Plaintiffs' motion for summary judgment, (Docket No. 55). An appropriate Order will be entered.

_Kevin H. Sharp_

KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE